**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DVD FORMAT/LOGO LICENSING CORP.,

Plaintiff,

v.

U-TECH MEDIA USA LLC and ZOBA
INTERNATIONAL CORP., d/b/a CD DIGITAL
CARD,

Defendants.

---

**'09 CIV 5461**

**JUDGE CROTTY**

Civil Action No.

**COMPLAINT**



Plaintiff DVD Format/Logo Licensing Corp. ("DVD FLLC"), by its attorneys

Paul, Weiss, Rifkind, Wharton & Garrison LLP, for its complaint against Defendants U-Tech

Media USA LLC ("U-Tech") and Zoba International Corp. d/b/a CD Digital Card Corp. ("CD

Digital"), alleges as follows:

### Nature of the Action

1.      This is an action for injunctive relief arising from Defendants' breach of

their contractual obligations under license agreements with DVD FLLC and their

misappropriation of DVD FLLC's trade secrets, and from defendant CD Digital's infringement

of DVD FLLC's registered trademarks for the familiar and ubiquitous DVD logo.

2.      The introduction of DVD technology in the 1990s launched the most

successful new generation of consumer products in history.  According to industry reports, since

1997, over 260 million DVD players and more than 10 billion DVD discs have been sold in the

United States and Canada alone.  Members of the DVD industry – including consumer

electronics manufacturers, disc replicators, motion picture studios, computer manufacturers, and

many others – have enjoyed the fruits of DVD technology and its continued commercial success. Consumers have incorporated DVD technology into their entertainment, educational, and commercial activities, to their incalculable benefit.

3.      The initial and ongoing success of the DVD technology is due in large measure to the early development and broad acceptance of a single set of technical specifications for the standard DVD formats (such as DVD-Video and DVD-R). These specifications maintain and enhance the consistency and inter-operability of various DVD products, including discs, players, and recorders. Consumers and members of the DVD industry alike have come to rely on the fact that DVD discs and hardware will operate in a consistent fashion, and will be compatible with each other, regardless of the particular product's source or manufacturer.

4.      DVD FLLC was established in 2000, and since then has been responsible for the publication of the technical specifications for the standard DVD formats. DVD FLLC also owns the trademarks worldwide for the DVD logo that appears on DVD products for sale in the United States and around the world. DVD FLLC is the exclusive licensor of the technical specifications and the DVD logo.

5.      DVD FLLC's licensing program is designed and intended to promote widespread acceptance of the DVD technical specifications and to maintain the consistency and compatibility of DVD products. For an up-front cost of $10,000 per format and product category, and with no additional charges, a manufacturer who desires to produce DVD products can obtain a license to use the DVD specifications and the DVD logo, where applicable. Every DVD FLLC licensee that uses the specifications in DVD products is required, however, to verify that it has deployed the DVD technical specifications properly. In addition, under the

terms of their agreements with DVD FLLC, licensees that use the DVD technical specifications in the design and manufacture of their DVD products may not alter the specifications, and DVD products that do not comply with the applicable DVD specifications are outside the scope of their license grants.  Only those DVD products that comply with the technical specifications may bear the DVD logo.

6.     Defendants U-Tech and CD Digital are DVD disc replicators and DVD FLLC licensees.  Both Defendants, however, have manufactured and distributed, or have announced their intention to manufacture and distribute, non-compliant DVD discs (i.e., discs that are manufactured by improperly using the DVD technical specifications), and are therefore outside the scope of their licenses from DVD FLLC.  Specifically, unlike most DVD discs that are rigid and 1.2 millimeters (mm) thick, the U-Tech and CD Digital discs are half as thick and they bend with little effort.  As a consequence, their design is not compatible with hardware that is specified to operate with a compliant (1.2 mm, rigid) DVD disc.  Moreover, CD Digital's non-compliant discs improperly bear the DVD logo.

7.     As set forth more fully below, by pursuing this course of action, Defendants have breached, or have announced their intention to breach, their contractual obligations to DVD FLLC.  In addition, Defendants' use of the specifications in contravention of the terms and conditions of their licenses from DVD FLLC constitutes a misappropriation of DVD FLLC's trade secrets.  CD Digital's unlicensed use of the DVD logo on non-compliant DVD discs constitutes a further breach of its contractual obligations and an infringement of DVD FLLC's registered U.S. trademarks.

8.     If Defendants' introduction of non-compliant DVD discs into the marketplace goes unchecked, their conduct will cause irreparable damage to the goodwill that

DVD FLLC has earned as a result of nearly 10 years of investment and effort in support of the technology reflected in the DVD specifications, and in support of the DVD logo. Moreover, Defendants' conduct, if unchecked, will result in the dissemination, under the guise of DVD FLLC's approval, of non-compliant DVD discs, resulting in direct and irreparable harm to DVD FLLC, to other members of the DVD industry, and to consumers of DVD products.

9.      DVD FLLC therefore brings this action for equitable relief, including but not limited to injunctive relief barring Defendants from further violations of their unequivocal obligations under their license agreements with DVD FLLC; from misappropriating DVD FLLC's trade secrets; and in the case of CD Digital, from infringing DVD FLLC's rights under its registered trademarks.

## The Parties

10.      Plaintiff DVD FLLC is a corporation duly organized and existing under the laws of Japan, with its principal place of business at Daimon Urbanist Bldg. 6F, 2-3-6 Shibadaimon, Minato-ku, Tokyo 105-0012, Japan.

11.      Upon information and belief, defendant U-Tech is a corporation duly organized and existing under the laws of the State of California, with its principal place of business at 1105 Montague Court, Milpitas, CA 95035.

12.      Upon information and belief, defendant CD Digital is a corporation duly organized and existing under the laws of the State of California, with its principal place of business at 11150 White Birch Drive, Rancho Cucamonga, CA 91730.

## Jurisdiction and Venue

13.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2). With respect to DVD FLLC's claims against defendant CD Digital, this Court's jurisdiction also arises under the Lanham Act, 15 U.S.C. § 1121, and the supplemental grants of

jurisdiction set forth in 28 U.S.C. §§ 1338 and 1367. The amount in controversy exceeds $75,000.

14.     This Court has personal jurisdiction over Defendants pursuant to the license agreements between DVD FLLC and each Defendant, in which the parties consented to be subject to the jurisdiction of this Court. The parties also waived any objection they may have as to venue in any proceeding brought in this Court.

## Facts

### DVD FLLC and the DVD Format/Logo License Agreement

15.     DVD FLLC was established in 2000 and incorporated in Japan. DVD FLLC publishes and licenses the so-called "DVD Format Books," which contain technical specifications for the standard DVD formats. These specifications include physical parameters for DVD discs, and operational specifications directed to the encoding and deciphering of the information on the DVD disc. DVD FLLC also oversees a program by which its licensees verify their understanding of, and compliance with, the DVD specifications. Finally, DVD FLLC has established and maintains programs to enforce and protect its intellectual property rights around the world.

16.     DVD FLLC also owns by assignment the valid and incontestable U.S. trademark registrations for the familiar DVD logo, Registration No. 2,295,726 and Registration No. 2,381,677. The DVD mark is both famous and distinctive, and is associated with DVD products that are designed and manufactured in accordance with the information, know-how and trade secrets in the DVD Format Books.

17.     DVD FLLC is the exclusive licensor of the rights to use the DVD Format Books and the DVD logo. DVD FLLC has entered into license agreements with over 400 companies around the world.

18.    The process by which DVD FLLC licenses use of the DVD specifications and the DVD logo begins with the prospective licensee's payment of a modest fee ($5,000) and execution of a Non-Disclosure Agreement.  In the Non-Disclosure Agreement, the prospective licensee agrees to maintain the confidentiality of the proprietary information, including trade secrets and other know-how, that it receives from DVD FLLC.  The prospective licensee further "acknowledges and agrees that . . . [t]he Proprietary Information to be disclosed by DVD FLLC hereunder is a valuable trade secret."

19.    Upon payment of the fee and execution of the Non-Disclosure Agreement, DVD FLLC provides the prospective licensee with the DVD Format Books that contain the specifications for the DVD format(s) (such as DVD-Video or DVD-R) in which the prospective licensee has an interest.  Use of the specifications under the Non-Disclosure Agreement is for evaluation purposes only, and not for commercial production.

20.    If the licensee decides to proceed with commercial production, it may apply for a license to use the DVD specifications and the DVD logo on commercial DVD products.  To obtain a license, the prospective licensee must pay a license fee of $10,000 per format and product category (with a one-time credit for the fee that the licensee paid upon execution of the Non-Disclosure Agreement), and execute a DVD Format/Logo License Agreement (the "License Agreement").  The License Agreement incorporates the terms and conditions of the Non-Disclosure Agreement by reference.

21.    In the License Agreement, DVD FLLC grants to the licensee (subject to certain terms and conditions) "a non-exclusive, non-transferable license, on a worldwide basis during the term hereof, . . . to use the DVD Format Book(s) identified in Annex A-1 as being licensed to Licensee, including the technical information, know-how and trade secrets contained

6

therein, solely in the development, manufacture . . ., sale, use or disposition of DVD Products

included in the DVD Product Category(ies) identified on Annex A-1 as being licensed to

Licensee." (Art. 2.1.)  The License Agreement defines a "Product" as "any disc, device or other

product that uses information disclosed in a DVD Format Book" (Art. 1.17), and a "DVD

Product" as "a Product . . . that conforms to the applicable DVD Format Book(s) specified in

Annex A-1." (Art. 1.10.)  Annex A-1 includes a list of the standard DVD formats, and indicates

the formats covered by a particular License Agreement.

22.     The License Agreement requires that "all Products manufactured or sold by

a Licensee shall comply with the specifications set forth in the applicable DVD Format Books,

and with updates or revisions of such DVD Format Books that Licensor may publish from time

to time." (Art. 2.8.)   Additionally, the License Agreement provides that "[t]he licenses granted

pursuant to Articles 2.1 and 3.1 of this Agreement [that is, the license to use the specifications

and the license to use the DVD logo] do not apply to any Product that does not meet the

requirements of Article 2.8." (Art. 2.9.)

23.     In the License Agreement, DVD FLLC also grants to the licensee (subject

to certain terms and conditions) "a non-exclusive, non-transferable license, on a worldwide

basis, without the right to sublicense, during the term hereof, to use the [DVD Logo] solely on

[specified DVD Products]," as well as related advertisements and sales literature.  (Art. 3.1.)

24.     DVD FLLC does not charge running royalties or, except as noted above,

any other fees in connection with the manufacture and/or sale of DVD Products.  Under the

terms of the License Agreement, however, a licensee's Product must undergo a "Verification"

process "for testing the Product's compliance with the applicable DVD Format Book(s) in

accordance with the applicable Test Specifications." (Art. 4.1.)  A licensee's failure to comply

with its Verification obligation, or the failure of a licensee's Product to satisfy the Verification requirements, can result in a termination of the License Agreement. (Art. 4.5.)

**The U-Tech and CD Digital Agreements**

25.     DVD FLLC and U-Tech Media Corporation of Tao-Yuan Shien, Taiwan, entered into a Non-Disclosure Agreement effective as of July 19, 2000. DVD FLLC and U-Tech Media Corporation entered into a License Agreement effective as of December 15, 2000 and a successor agreement dated as of March 15, 2005 (the latter is referred to herein as the "U-Tech License Agreement"). Under the terms of the U-Tech License Agreement, the licenses granted to U-Tech Media Corporation extend to certain of its affiliated companies, including Defendant U-Tech Media USA LLC. The U-Tech License Agreement incorporates the earlier Non-Disclosure Agreement by reference. The U-Tech License Agreement and the Non-Disclosure Agreement are valid and binding contracts enforceable in accordance with their terms.

26.     DVD FLLC and CD Digital entered into a Non-Disclosure Agreement effective as of October 23, 2008. DVD FLLC and CD Digital entered into a License Agreement effective as of November 21, 2008 (the "CD Digital License Agreement"). The CD Digital License Agreement incorporates the earlier Non-Disclosure Agreement by reference. Both agreements remain in effect and are valid and binding contracts enforceable in accordance with their terms.

**Defendants' Manufacture and Distribution of Non-Compliant Discs**

27.     A DVD manufactured according to the specifications in the DVD Format Books is 1.2 mm thick. By complying with the specifications in this regard, both DVD replicators and hardware manufacturers can ensure the inter-operability of their DVD products with other DVD products on the market – that is, other things being equal, the compliant disc

8

will fit into the specification-compliant DVD disc drives found in consumer electronics products, and the disc drives designed for compliant DVD discs in the consumer electronics products will read and process the information on those discs properly.

28.     Upon information and belief, CD Digital has manufactured and distributed in the United States DVD discs that are 0.6 mm thick – that is, half as thick as a DVD disc that complies with the specifications in the DVD Format Books.  CD Digital markets and promotes these discs as "Flex DVD"s or "Flex VCD"s.  CD Digital's promotional materials indicate that the Flex DVD/Flex VCD discs "have the standard capacity and playability features as a traditional DVD-5 [a standard type of DVD disc]."  The CD Digital promotional material also states that the Flex DVD/Flex VCD disc and the standard DVD have the identical "DVD-Video and DVD-ROM" formats.

29.     Upon information and belief, CD Digital has manufactured and distributed in the United States Flex DVD/Flex VCD products that bear the DVD logo.

30.     Upon information and belief, U-Tech has manufactured and distributed in the United States DVD discs that are 0.6 mm thick, or is prepared to do so imminently. According to press reports, U-Tech has entered into license agreements with a European firm, EcoDisc Technology AG ("EcoDisc"), regarding the technology to manufacture DVD discs that are only 0.6 mm thick.  EcoDisc markets and promotes these discs as identical to standard DVD discs in all other respects.

31.     Furthermore, EcoDisc has acknowledged in a pleading filed in a German court (1) that "DVD FLLC publishes the books (so-called 'DVD Format Books') where the respective specifications of individual DVD formats, namely DVD-ROM, DVD-Video and DVD-Audio are printed," and (2) that "[t]he specifications for the DVD formats DVD-ROM,

DVD-Video and DVD-Audio are standards applicable throughout the world which, in particular, ensure that the DVDs are readable and can be played in standard players." In addition, EcoDisc has represented that, except for its physical dimensions, "[b]oth with regard to its data storage capacity and the playability on DVD players," the 0.6 mm disc "corresponds to the conventional DVD of the common type 'DVD-5'."[1]

      32.    Upon information and belief, use of non-compliant 0.6 mm discs has caused, and will continue to cause, malfunctions in DVD-related consumer electronics products. Reports in the press, on websites, and on EcoDisc's own promotional materials tell of malfunctions in which non-compliant 0.6 mm discs jam in a disc drive, causing malfunctions. These results have been confirmed by industry studies. In addition, industry studies show that the physical features of the non-compliant 0.6 mm discs can and will affect the ability of a DVD player to read the information on the disc, and to process that information correctly – in some instances, causing disruption in the video display.

      33.    DVD FLLC has not authorized the use of the technical specifications in the DVD Format Books for the manufacture of non-compliant, 0.6 mm discs.

      34.    DVD FLLC has not authorized the use of the DVD logo on non-compliant, 0.6 mm discs.

      35.    Defendants' conduct is in violation of the terms and conditions of the licenses granted to them by DVD FLLC. In addition, Defendants' conduct is a flagrant violation of DVD FLLC's intellectual property rights in and to the information, know-how and trade secrets set forth in the DVD Format Books and, in CD Digital's case, in the DVD logo.

---

[1]   Translations from the original German were prepared by German counsel.

36.     Upon information and belief, Defendants' violation of the terms and conditions of the licenses granted them by DVD FLLC, and their infringement of DVD FLLC's intellectual property rights, is knowing, intentional, and willful.

**DVD FLLC Will Suffer Irreparable Harm**

37.     Unless Defendants are restrained by this Court, DVD FLLC will suffer substantial, imminent and irreparable injury.  Among other things, DVD FLLC has made a substantial investment in its licensing program, a principal objective of which is to ensure the consistency and compatibility of DVD products.  DVD FLLC enjoys substantial goodwill among members of the DVD industry and among consumers as a result of the success of its licensing program, including its success to date in achieving its consistency and compatibility objectives.  Because the introduction of non-compliant products, including 0.6 mm discs, can and does interfere with the operation of DVD products, Defendants' introduction and further distribution of non-compliant discs into the DVD market poses an imminent threat to that goodwill.  The introduction of non-compliant products will undermine industry and consumer confidence in DVD technology generally, and will interfere with DVD FLLC's efforts to continue to promote and expand a licensing program that is premised on the common benefits that derive from licensees' compliance with a common set of specifications.  In addition, CD Digital's unauthorized and unlicensed use of the DVD logo on non-compliant discs will erode the goodwill associated with that logo as a symbol of a compliant DVD product.

**FIRST CAUSE OF ACTION**
**(Breach of Contract by both Defendants)**

38.     Plaintiff DVD FLLC repeats and realleges paragraphs 1 through 37 above.

39.     On information and belief, Defendants have begun, or will imminently begin, manufacturing, marketing, and selling non-compliant DVD discs.

11

40.     By virtue of their aforementioned conduct, Defendants have breached, or imminently will be in breach of, their contractual obligations to DVD FLLC under their respective License Agreements.

41.     Defendants' conduct has caused and/or will imminently cause DVD FLLC to suffer irreparable harm, for which it has no adequate remedy at law.

## SECOND CAUSE OF ACTION
### (Breach of Contract by CD Digital)

42.     Plaintiff DVD FLLC repeats and realleges paragraphs 1 through 41 above.

43.     On information and belief, CD Digital has applied the DVD logo to 0.6 mm discs, in violation of the License Agreement.

44.     By virtue of this conduct, CD Digital has breached, and will continue to breach, its contractual obligations to DVD FLLC.

45.     CD Digital's conduct has caused and/or will imminently cause DVD FLLC to suffer irreparable harm, for which it has no adequate remedy at law.

## THIRD CAUSE OF ACTION
### (Misappropriation of Trade Secrets by both Defendants)

46.     Plaintiff DVD FLLC repeats and realleges paragraphs 1 through 45 above.

47.     Defendants' license to use the information, know-how and trade secrets in the DVD Format Books is restricted to products that comply with the specifications set forth therein.

48.     Upon information and belief, Defendants have used, or imminently will use, the information, know-how and trade secrets in the DVD Format Books to manufacture and distribute non-compliant 0.6 mm discs.

49.    By virtue of the aforementioned conduct, Defendants have breached, or imminently will breach, their common-law duties not to use or misappropriate DVD FLLC's trade secrets and confidential, proprietary information.

50.    Defendants' conduct has caused and/or will imminently cause DVD FLLC to suffer irreparable harm, for which it has no adequate remedy at law.

## FOURTH CAUSE OF ACTION
**(Trademark Infringement and Unfair Competition by CD Digital under the Lanham Act)**

51.    Plaintiff DVD FLLC repeats and realleges paragraphs 1 through 50 above.

52.    DVD FLLC owns the registered trademarks in the DVD logo (Registration No. 2,295,726 and Registration No. 2,381,677).  DVD FLLC's registered trademarks are valid and subsisting.

53.    In addition to the registered marks, DVD FLLC owns valuable common law trademark rights in the DVD logo that, by virtue of its use by DVD FLLC, its licensees, and other authorized users in connection with the promotion of DVD products, has gained widespread consumer recognition.  Substantial goodwill has been associated with the DVD logo in the United States and other markets.

54.    Upon information and belief, CD Digital has used, is using, and/or imminently intends to use the DVD logo in interstate commerce, without the consent or authorization of DVD FLLC, in connection with the sale of goods that compete with those offered by DVD FLLC's licensees and/or in connection with the advertising and promotion of such goods.

55.    CD Digital's conduct as alleged above has caused and/or is likely to cause confusion or mistake or deception of the public as to, among other things, (i) the relationship between CD Digital's 0.6 mm discs and the DVD products manufactured in accordance with the

specifications set forth in the DVD Format Books, (ii) the association of CD Digital's non-compliant products with other DVD products that comply with those specifications, and/or (iii) the sponsorship of CD Digital's non-compliant products by DVD FLLC and/or other members of the DVD industry.

56.   CD Digital's conduct is in violation of the Lanham Act, 15 U.S.C. § 1114.

57.   Upon information and belief, CD Digital's actions were deliberate, willful, and in conscious disregard of DVD FLLC's rights.

58.   CD Digital's conduct has caused and/or will imminently cause DVD FLLC to suffer irreparable harm, for which it has no adequate remedy at law.

## FIFTH CAUSE OF ACTION
### (Dilution under the Lanham Act)

59.   Plaintiff DVD FLLC repeats and realleges paragraphs 1 through 58 above.

60.   DVD FLLC owns the registered trademarks in the DVD logo (Registration No. 2,295,726 and Registration No. 2,381,677). DVD FLLC's registered trademarks are valid and subsisting.

61.   The DVD registered trademarks are famous and distinctive within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and DVD FLLC has established and maintains valuable goodwill in these marks. These marks first enjoyed such distinction and fame prior to CD Digital's first unauthorized use of the DVD marks.

62.   Upon information and belief, CD Digital has used, is using, and/or intends to use the DVD marks in interstate commerce in connection with the advertising and promotion of products sold by CD Digital.

63.   CD Digital's use of the DVD marks has caused actual harm and is likely to cause harm to DVD FLLC by diluting and weakening the unique and distinctive significance and

quality of the DVD trademarks to identify DVD format-compliant products and by tarnishing DVD FLLC's name and trademarks in the minds of consumers.

64.    By reason of the foregoing, CD Digital has violated Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

65.    Upon information and belief, CD Digital's actions were deliberate, willful, and in conscious disregard of DVD FLLC's rights, and constituted a willful effort to trade on DVD FLLC's reputation.

66.    CD Digital's conduct as alleged above has caused and/or will cause DVD FLLC to suffer injury, for which it has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, DVD FLLC demands judgment against defendants as follows:

1.    Preliminarily and permanently enjoining and restraining Defendants, including their officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with them, or having actual notice of the Court's Order, from:

(a)    replicating, producing, or manufacturing, selling or otherwise distributing 0.6mm discs that were designed or manufactured using information, know-how and/or trade secrets set forth in the DVD Format Books;

(b)    unauthorized use of the information, know-how and/or trade secrets set forth in the DVD Format Books;

(c)    manufacturing, producing, distributing, advertising, promoting, selling, or offering for sale any 0.6mm disc bearing the DVD logo;

(d)    making any representations indicating or suggesting that 0.6mm discs are consistent or interchangeable with standard DVD formats, such as DVD-Video;

(e)     engaging in any conduct that tends to dilute, tarnish, or blur the distinctive quality of DVD FLLC's DVD logo;

(f)     aiding or abetting any party in the commission of the acts specified in subparagraphs (a)–(f) above.

2.     In addition to the order specified in paragraph 1 above, an order directing Defendants (i) to destroy any stock or inventory of non-compliant DVD products in their possession, custody or control, (ii) to destroy any equipment, devices, software, or other tools or implements used in the production of non-compliant DVD products, and (iii) to recall from their customers, distributors, and any other recipients any non-compliant DVD products that Defendants have or will have manufactured and/or distributed.

3.     Ordering Defendants to account to DVD FLLC for all gains, profits, savings, and advantages obtained by it as a result of its breach of contract, misappropriation of trade secrets, and trademark infringement and unfair competition, and awarding to DVD FLLC restitution in the amount of all such gains, profits, savings, and advantages;

4.     Awarding to DVD FLLC its reasonable attorneys' fees, together with the costs and disbursements of this action;

16

5.      Granting DVD FLLC such other and further relief as the Court deems just

and proper.

Dated:  New York, New York
          June 12, 2009

Steven C. Herzog (Bar No. SH-2197)
sherzog@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

OF COUNSEL:

Robert P. Parker
rparker@paulweiss.com
Whitney Dougherty Russell
wrussell@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street NW, Suite 500
Washington DC  20006
(202) 223-7300

Attorneys for DVD FLLC.